The Honorable Bobby Glover State Senator Post Office Box 1 Carlisle, Arkansas 72024-0001
Dear Senator Glover:
I am writing in response to your request for an opinion on four questions concerning the establishment of fire protection districts. You state that "[b]ased upon a judgment from the Circuit Court of Lonoke County regarding Ordinance 5-1993, a property owner in the South Bend Fire District, which is located in Lonoke County, has questions regarding the regulation, funding, and tax collection process for the fire district."
The particular Circuit Court Order you reference, filed June 26, 2007 in the First Division of Lonoke County Circuit Court, is entitled "Declaratory Judgment" and finds, among other things, that: 1) Lonoke County Ordinance 5-1993 authorized a maximum assessment of benefits in the fire district of $50,000, which, pursuant to the Ordinance, could not be increased without a petition of the majority of the property owners of the district, and 2) a later ordinance, Ordinance 7 of 1999, purported to increase the original assessment of Ordinance 5-1993, but was unauthorized because it was passed only at the request of the Commissioners and not by petition of the property owners. The court also found that the applicable procedures in A.C.A. §§ 1 4 — 2 8 4 — 2 0 1 — 225 had not been followed by the Southbend District. It therefore ordered that as to the particular plaintiff, the tax collector of Lonoke County "may not collect any more than the original assessment until such time as the Code has been followed."
You pose four questions concerning the establishment and funding of fire districts as follows: *Page 2 
 1. Can a Quorum Court establish a fire district without a final vote or approval by the fire district residents?
 2. If property owners within a fire district were not given an opportunity to vote for a fire district, does that fire district have the authority to assess taxes?
 3. If yes, what remedies do property owners have if the property owners had no knowledge of how the assessment was calculated?
 4. If a fire district has been established by a Quorum Court vote only, is the fire district required to obtain approval by vote of a majority of property owners prior to assessing any tax?
RESPONSE
I cannot address the particular situation in the Southbend Fire District. That issue has been the subject of litigation and any further questions concerning that District should be addressed to the judicial process or to private counsel, with access to all the relevant facts. I am not a fact-finder in the issuance of Attorney General opinions and cannot speak specifically to the situation involving the Southbend District. I can set out below, however, the general state law applicable to the creation of districts under A.C.A. § 14-284-201 — 225 (Repl. 1999 and Supp. 2003) and their assessment of benefits. See, e.g., Op. Att'y Gen. 2001-318 (addressing general questions posed after a recitation of facts relating to the Southbend Fire Protection District). Under state law, the answers to your first and second questions are "yes" and "yes." In response to your third question, the applicable remedy may depend upon how the assessments are levied and when the district was created. For districts that levy assessments based upon the benefit to individual tracts of land, public notice and an opportunity to be heard on the assessment or reassessment of benefits is provided by A.C.A. § 14-284-213. An appeal to circuit court is provided. For more recently-created districts that are authorized to levy "flat fee" assessments, the remedy for the original flat fee assessment is apparently to petition against the initial creation of the district, or to voice an objection at the public hearing regarding the adoption of the ordinance setting the original levy. For subsequent increases in flat fee assessments, the remedy in districts created after July 3, 1995, is provided by statute. No increase *Page 3 
in such assessments may be had without an election of the assessed landowners or property owners. For districts created after July 3, 1989 and before July 3, 1995, which are authorized to levy flat fee assessments under Act 648 of 1989, the remedy for an increase in the flat fee assessment is not clear. Reference to any applicable county ordinance may be required. Finally, in my opinion the answer to your fourth question is generally "no" under state law. In districts created after July 3, 1995 and levying flat fee assessments, however, as stated above, A.C.A. § 14-284-212(g)(2)(A) requires an election for any increase in the flat fee.
Question 1 — Can a Quorum Court establish a fire district without afinal vote or approval by the fire district residents?
In my opinion the answer to this question is "yes."
The applicable subchapter sets out three ways in which fire protection districts may be created:
 Fire protection districts may be established to serve all or any defined portion of any county in any of the following ways:
 (1) By ten percent (10%) of the qualified electors in the proposed district's petitioning the quorum court to hold a public hearing and to form a district, and by the quorum court's adopting an ordinance calling for notice and a public hearing within the district;
 (2) By the county court pursuant to an election of the qualified electors of the proposed district initiated, called, and conducted as provided in this subchapter; or
 (3) By the county court pursuant to a resolution of a suburban improvement district, approved by unanimous vote of its board of commissioners, to convert to a fire protection district to be administered under this subchapter.
A.C.A. § 14-284-203 (Supp. 2007). See also, Hannah v. Deboer,311 Ark. 215, 843 S.W.2d 800 (1992). *Page 4 
The formation of a district by the quorum court, as authorized by subdivision (1) above, is governed by A.C.A. § 14-284-204, which provides in pertinent part as follows:
 (a)(1) If petitions containing a description of the territory for a proposed fire protection district, along with an accurate map of the proposed district boundaries, and containing the signatures of ten percent (10%) or more of the qualified electors within the proposed district are filed with the county quorum court of a county in which the proposed fire protection district is to be located, and requesting a public hearing and the establishment of a fire protection district in the county, then the county quorum court or quorum courts, if the district is located in more than one (1) county, shall conduct a public hearing to determine the support for the proposed district.
 * * * (B) When a time and place for the hearing are set, the quorum court shall publish notice of the hearing in a newspaper of general circulation in the county.
 * * * (b)(1) After the petitions are certified and the initial public hearing held, the county quorum court may adopt an ordinance to establish the district, to levy assessments on property or the landowners, or both, and to call for a public hearing on the ordinance.
 (2) The ordinance shall set the time and place for a public hearing on the ordinance to be held within the boundaries of the proposed district.
 (c)(1)(A) When an ordinance is adopted by the quorum court establishing a fire protection district, the quorum court shall publish notice of the adoption of the ordinance in a newspaper of general circulation in the county. *Page 5 
 (B) The notice shall include a copy of the ordinance and shall prescribe a time and place within the proposed district for a public hearing on the ordinance.
 * * * (B) If at the hearing a majority of the qualified electors in the proposed district appear in person to oppose the establishment of the district or if petitions opposing the establishment of the district and containing the signatures of a majority of the qualified electors in the proposed district are filed at or before the public hearing, the ordinance creating the district shall be void.
 (C)(i) If a majority of the qualified electors of the proposed district do not object to the establishment of the district in person or by petition within the time prescribed in this subsection, the ordinance shall be valid and the district shall be established.
In response to your first question, it is clear under A.C.A. § 14-284-203 and the statute above that a fire protection district may be established "without a final vote or approval by the fire district residents." Public notice and a hearing are provided for in A.C.A. § 14-284-204 and the district shall be created unless a majority of the qualified electors object to its creation either in person or by petition within the applicable time period.
Question 2 — If property owners within a fire district were not givenan opportunity to vote for a fire district, does that fire district havethe authority to assess taxes?
In my opinion the answer to this question is also "yes." Again, the question is governed by A.C.A. § 14-284-204, subsection (c)(2)(C), which states in relevant part:
 (C)(i) If a majority of the qualified electors of the proposed district do not object to the establishment of the district in person or by petition within the time prescribed in this subsection, the ordinance shall be valid and the district shall be established. *Page 6 
 ii) The board of commissioners for the district shall be appointed and serve, and the levy of assessed benefits to support the district may be made, in the same manner as is provided in this subchapter for fire protection districts established pursuant to a vote of the electors.
The answer to your second question, involving the assessment of "taxes" without a vote of the people, is therefore "yes."[1] It should be noted, however, that districts established by the quorum court without a vote of the people may not issue bonds without approval of a majority of the qualified electors. Id. at (d).
Question 3 — If yes, what remedies do property owners have if theproperty owners had no knowledge of how the assessment wascalculated?
The answer to this question may depend upon how the assessments are levied and when the district was created. Some explanation is required.
As originally adopted, by virtue of Acts 1979, No. 35, the applicable subchapter only authorized fire protection districts to levy "assessments," which reflected the "benefits to the lands within the district." Under this procedure, the board of the fire district is to appoint three assessors to assess the annual benefits. A.C.A. § 14-284-212(b). The assessors are to assess the annual benefits to the lands and "inscribe in a book each tract of land and extend opposite the inscription of each tract of land *Page 7 
then amount of annual benefits that will accrue each year to that land by reason of the services." A.C.A. § 14-284-212(c). Subsection (d) of the same statute provides that:
 The original assessment of benefits and any reassessment shall be advertised and equalized in the same manner as provided in this subchapter, and owners of all property whose assessment has been raised shall have the right to be heard and to appeal from the decision of the assessors, as hereinafter provided.
Emphasis added. See also, A.C.A. § 14-284-214 (providing for an annual reassessment of benefits, if necessary).
Section 14-284-213 of the applicable subchapter addresses the right of property owners to object to an assessment or reassessment under this procedure. It states in pertinent part as follows:
 (a) The assessment or reassessment shall be filed with the county clerk of the county, and the secretary of the board shall thereupon give notice of its filing by publication once a week for two (2) weeks in a newspaper having a bona fide circulation in the county. This notice may be in the following form:
 "Notice is hereby given that the assessment of annual benefits of ___ District Number ___ has been filed in the office of the County Clerk of ___ County, where it is open for inspection. All persons wishing to be heard on said assessment will be heard by the assessors of said district in the office of the County Clerk between the hours of 1p.m. and 4p.m., at ___, on the ___ day of ___, 19___."
 (b) On the day named by the notice, it shall be the duty of the assessors to meet as a board of assessors at the place named to hear all complaints against the assessment or reassessment and to equalize and adjust the same. Their determination shall be final unless suit is brought in the chancery court within thirty (30) days to review it. If the board is unable to hear all complaints between *Page 8 
the hours designated, they shall adjourn over from day to day until all parties have been heard.
Emphasis added.
Property owners who object to the levy of assessments or reassessments on their property under this procedure thus have an opportunity to appear and object to the assessment against their property, and to appeal any determination to chancery (now circuit), court.[2]
In response to your third question, therefore, if this is the method by which the fire district levies assessments, the remedy of an aggrieved property owner is as provided in A.C.A. § 14-284-213.
The applicable subchapter was amended, however, in both 1989 and 1995, to authorize, as an alternative to assessing benefits, the levy of a "flat fee" per parcel of land. See Acts 1989, No. 648 and Acts 1995, No. 766, codified in pertinent part at A.C.A. §14-284-212(g).[3] As explained by one of my predecessors:
 Prior to 1989, fire protection districts formed pursuant to A.C.A. § 14-284-201 et seq. were required to obtain the funding for their operations by assessing benefits to the property located in the district, and collecting the amount of the assessed benefit in the same manner as a tax, along with bona fide taxes. See A.C.A. § 14-284-215. The assessment was payable at the same time that ad valorem taxes were payable. See A.C.A. § 14-284-216. When a fire protection district did attempt to impose a flat rate fee, the Arkansas Supreme Court struck it down on the grounds that it was contrary to state law. See Cox v. Commissioners of Maynard Fire Imp. Dist. No. 1, 287 Ark. 173, 697 S.W.2d 104 (1985). *Page 9 
 Subsequent to the Cox decision (in 1989), the legislature amended A.C.A. § 14-284-212 so as to provide authority for imposing the type of flat rate fee that had been stricken down in Cox. The amending language states:
 (g) The boards of commissioners of fire protection districts formed after July 3, 1989, under this subchapter may, as an alternative to assessing benefits, assess a flat fee per parcel of land located within the district. Furthermore, the boards may establish a different fee for commercial property than for residential property.
A.C.A. § 14-284-212(g).
Op. Att'y Gen. 1995-207 at 2, referring to Act 648 of 1989.
The applicable subsection was amended again in 1995. That amendment is now reflected at A.C.A. § 14-284-212(g), which provides in pertinent part that:
 (g)(1)(A) The elected board of commissioners of a fire protection district formed after July 3, 1995, under this subchapter may, as an alternative to assessing benefits, assess a flat fee per parcel of land located within the district or assess a flat fee per landowner who owns land located within the district.
 * * * (2)(A) If the elected board of commissioners of a fire protection district formed after July 3, 1995, under this subchapter, assesses an increase in the flat fee per parcel classification or an increase in the assessment per landowner or an increase in the assessment for both parcel classification and landowner, the increased assessment must be approved in an election by a majority vote of the votes cast in person by the assessed landowners or the assessed per-parcel property owners.
Emphasis added. See also Op. Att'y Gen. 2008-060 at n. 1. It is now clear that under either procedure (benefit assessments or flat fees), the sums are collected *Page 10 
(except delinquent charges), along with taxes by the county tax collector. See A.C.A. § 14-284-215 and § 14-284-216.
As for the applicable remedy for the levy of flat fees, it is somewhat unclear whether the procedure for objecting to an assessment of benefits under A.C.A. § 14-284-213, including an appeal to circuit court, and the procedures for an annual reassessment of benefits under A.C.A. § 14-284-214, apply to the levy of flat fees. Both Act 648 of 1989 and Act 766 of 1995 state that the levy of "flat fees" is to be "an alternative to assessing benefits." A.C.A. § 14-284-212(g)(1)(A). Any landowner wishing to object to the manner or rate by which an original flat fee assessment is levied would therefore presumably voice his objection in the public hearing required on creation of the district (if the district was created by the quorum court without an election). See A.C.A. § 14-284-204, discussed previously. Section 14-284-212(g) above also makes clear that any increase in a flat fee assessment in a district created after July 3, 1995 may not be made without an election of the affected landowners or property owners.
Some uncertainty surrounds the remedy of a landowner, however, in a district created after July 3, 1989 (pursuant to Act 648 of 1989), but before July 3, 1995, who wishes to object to an increase in a flat fee rate. Although fire districts created after July 3, 1989 are authorized to levy a flat rate pursuant to Act 648 of 1989, that authorization no longer appears in the codified statute. A landowner wishing to object to the levy of an original flat fee rate in such a district would presumably, as stated above, voice his objections at a public hearing creating the district, if it was created without an election. The 1989 act, however, unlike the newer 1995 act, does not provide any requirement for an election before the flat fee rate isincreased. The 1989 act, in fact, did not mention any increase in the flat fee rate at all, stating simply that:
 The boards of commissioners of fire protection districts formed hereafter under Arkansas Code 14-284-210 et seq. may, as an alternative to assessing benefits, assess a flat fee per parcel of land located within the district. Furthermore, the boards may establish a different fee for commercial property than for residential property.
Acts 1989, No. 648, § 2. *Page 11 
The remedy of a landowner who wishes to object to the increase in a flat fee rate of a district created between July 3, 1989 and July 3, 1995 is therefore unclear. Reference to any applicable county ordinance may be required in this regard. See, e.g., Lonoke County Ordinance 5-1993 (setting a maximum assessed benefit in the Southbend District at $50,000 and stating that it shall not be increased unless a majority of the property owners petition the commissioners to order the assessor to increase the assessments because of inflation or other causes).[4]
Question 4 — If a fire district has been established by a QuorumCourt vote only, is the fire district required to obtain approval byvote of a majority of property owners prior to assessing any tax?
I believe this question is adequately answered by the discussion in response to Questions 2 and 3 above. Under state law, the answer is generally "no." Assuming, however, you are referring to an increase in a flat fee assessment in a district created after July 3, 1995, A.C.A. § 14-284-212(g)(2)(A) requires an election for increases in such flat rates.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
[1] This authorization apparently does not run afoul of Arkansas Constitution, art. 19, § 27, which provides that:
 Nothing in this Constitution shall be construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be ad valorem and uniform.
Emphasis added.
This constitutional directive applies only to improvement districts purely local to a municipality and does not include districts including property inside as well as outside the municipal limits. See, e.g.,Butler v. Board of Directors, 99 Ark. 100, 137 S.W. 251 (1911) andCurlin v. Harding Drain Improvement District, 221 Ark. 412,252 S.W.2d 345 (1952). Section 14-284-201 — 225 of the Arkansas Code, at issue in this opinion, authorizes fire protection districts covering "only territory within the county, or within the defined district, outside of the corporate limits of cities and towns." A.C.A. § 14-284-201(a)(1).
[2] Amendment 80 to the Arkansas Constitution abolished "chancery courts" and vested the full powers of chancery in the circuit courts.See Ark. Const., amend. 80, § 19(B)(1).
[3] Again, Arkansas Constitution, art. 19, § 27, which requires assessments to be "ad valorem," meaning based upon value, does not apply to the fire protection districts created under A.C.A. §§ 14-284-201
— 225, which cover territory in the unincorporated areas of counties.
[4] The Lonoke County Ordinance does not state whether the Southbend District will levy benefit assessments or a flat fee, stating only that ". . . the manner of assessing and reassessing such levies shall be in a fair and just manner as proscribed by law." Id. at § 2. *Page 1